IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| APRIL M. REYNOLDS, Plaintiff, v. AUTOZONE, INC. a.k.a. AUTOZONERS, LLC, Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:17-CV-1319 TS<br><br>District Judge Ted Stewart |
|---|---|

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I.  BACKGROUND

Plaintiff April Reynolds was hired by Defendant AutoZone, Inc. on July 16, 2009, and was employed as a full-time sales associate. Plaintiff began having knee problems in 2010. Plaintiff's weight contributed to arthritis in her knees.

On December 19, 2010, Plaintiff transferred to a different AutoZone store where she continued to work as a full-time sales associate. Plaintiff was then promoted to Parts Sales Manager and again to Commercial Sales Manager ("CSM"). The job description for the CSM position includes the following physical requirements:

- Frequently bending, twisting, and rotating trunk, arms and legs
- Standing 100% of the time; walking 99% of the time; climbing 10% of the time
- Working with arms extended and bent constantly
- Frequently moving parts and stock weighing up to 35 lbs., 10 to 50 feet
- Occasionally moving parts and stock weighing up to 50 lbs.; pushing and pulling occasionally
- Frequently moving merchandise weighing 10-25 lbs. from floor to counter

1

> • Occasionally moving and stocking overhead shelves with parts weighing 5 - 15 lbs .
> • Constant gross hand and finder dexterity; frequently grasping and manipulating
> • Constant hand and eye coordination[1]

On November 8, 2013, Plaintiff received gastric sleeve bariatric surgery. On November 18, 2013, one of Plaintiff's doctors, Richard L. Glines, M.D., stated in a letter that Plaintiff required the use of a cane through January 2014 for degenerative joint disease of the left knee. On November 23, 2013, Plaintiff was released to work with no restrictions in relation to her gastric sleeve surgery.

After Plaintiff returned to work following her surgery, Victor Vickrey, AutoZone's Regional Human Resource Manager visited Plaintiff's store and noticed Plaintiff using a cane. Vickrey asked Plaintiff to provide another physician report listing her exact restrictions.

On December 19, 2013, Derek Boam, M.D., released Plaintiff to work with certain restrictions. Those restrictions included not lifting, carrying, pushing, or pulling anything over 20 pounds. Additionally, Plaintiff was limited in her ability to squat, crouch, climb stairs or ladders, kneel, crawl, do overhead work, stand, and walk. These restrictions were to remain in place until February 14, 2014.

After this report was prepared, Vickrey met with Plaintiff on December 30, 2013. Plaintiff confirmed that she had difficulty performing the following job functions: standing, kneeling, walking, lifting, climbing, pulling, and stocking shelves. She additionally listed the following job-related limitations: squatting, climbing, lifting over 20 pounds, and pushing or pulling over 20 pounds.

---

[1] Docket No. 17-1, at 80.

On a form completed that day, Plaintiff requested having an additional person at the store whenever she was scheduled to assist her.[2] Plaintiff contends that Vickrey instructed her to write this and what she was actually requesting was an informal accommodation where other workers already present would provide help when needed. After this request, Defendant decided to place Plaintiff on a leave of absence, effective until February 19, 2014.

Plaintiff again saw Dr. Boam on February 18, 2014. Dr. Boam noted the same restrictions. He also stated that Plaintiff required a knee replacement and must use a cane when ambulatory. These restrictions were in place until May 19, 2014. Defendant then extended Plaintiff's leave.

On June 2, 2014, Plaintiff had a partial knee replacement performed. On August 28, 2014, Dan Richards, D.O., released Plaintiff to return work on September 8, 2014, with the same restrictions previously imposed. Defendant again extended Plaintiff's leave. Plaintiff concedes that she was not able to work from June 2014 to September 2014.[3]

Plaintiff met with Vickrey and District Manager Barry Funk on February 3, 2015. Plaintiff informed Vickrey and Funk that she was about to have surgery on her other knee and, therefore, remained on leave.

On February 19, 2015, Dr. Richards performed surgery on Plaintiff's other knee, replacing the right knee cap.

---

[2] Docket No. 17-1, at 82.
[3] Docket No. 18, at 29 n.6.

On May 18, 2015, Dr. Richards released Plaintiff to return to work, again with restrictions. On June 9, 2015, Plaintiff requested an accommodation that would allow someone else to climb ladders for her and help put away parts.

Plaintiff returned to work on June 22, 2015. Plaintiff voluntarily terminated her employment on August 3, 2015.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[5] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[6]

## III. DISCUSSION

Plaintiff asserts the following causes of action: failure to accommodate; disability discrimination; retaliation; and gender discrimination. Each claim will be discussed below.

---

[4] Fed. R. Civ. P. 56(a).

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[6] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

A.  DISCRIMINATION UNDER THE ADA

Discrimination under the ADA encompasses three types of discrimination: disparate treatment, failure to accommodate, and disparate impact.[7] Plaintiff brings claims for disparate treatment and failure to accommodate. "Where, as here, an ADA plaintiff seeks to proceed to trial exclusively on the basis of circumstantial evidence of discrimination, [the Tenth Circuit has] held that 'the analytical framework first articulated in' *McDonnell Douglas* . . . controls our analysis."[8] Under that framework, Plaintiff must first establish a prima facie case of discrimination.[9] If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.[10] Once the defendant articulates a legitimate, non-discriminatory reason for its action, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the defendant's reasons are pretextual.[11]

   *1.  Failure to Accommodate*

The ADA provides that discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation

---

[7] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188–89 (10th Cir. 2003).

[8] *Johnson v. Weld Cty. Colo.*, 594 F.3d 1202, 1217 (10th Cir. 2010) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)). A failure-to-accommodate claim is evaluated under a modified *McDonnell Douglas* burden-shifting framework. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1049–50 (10th Cir. 2017).

[9] *Johnson*, 594 F.3d at 1217.

[10] *Id.*

[11] *Id.*

would impose an undue hardship on the operation of the business of such covered entity."[12] A reasonable accommodation "may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."[13]

"In order to establish a prima facie case of failure to accommodate in accordance with the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability."[14]

The ADA "requires an employer to provide a 'reasonable accommodation, not the accommodation [the employee] would prefer.'"[15]

> [The ADA's] use of the word "reasonable" as an adjective for the word "accommodate" connotes that an employer is not required to accommodate an employee in any manner in which that employee desires. This is so because the word "reasonable" would be rendered superfluous in the ADA if employers were required in every instance to provide employees the maximum accommodation or every conceivable accommodation possible. . . . Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation.[16]

---

[12] 42 U.S.C. § 12112(b)(5)(A).

[13] *Id.* § 12111(9)(B).

[14] *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (quoting *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 74, 747–48 (7th Cir. 2011)).

[15] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1263 (10th Cir. 2001) (quoting *Rehling v. City of Chi.*, 207 F.3d 1009, 1014 (7th Cir. 2000)).

[16] *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285–86 (11th Cir. 1997)).

Here, the evidence demonstrates that Defendant provided a reasonable accommodation. The Tenth Circuit has repeatedly held that a leave of absence can be a reasonable accommodation.[17] Plaintiff asserts that Defendant should have allowed her to continue working and to rely on her fellow employees to help, when needed. However, Plaintiff is not entitled to an accommodation of her choice. While Plaintiff may have wanted a different accommodation than was provided by Defendant, the ADA did not require Defendant to provide Plaintiff with her preferred accommodation, only a reasonable one. Moreover, Plaintiff's requested accommodation would have required other employees to perform essential functions of Plaintiff's job. The Tenth Circuit has consistently held "that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation."[18] Moreover, shifting Plaintiff's job duties onto her coworkers "would result in other employees having to work harder or longer hours," which is not a reasonable accommodation.[19] Therefore, Plaintiff's reasonable accommodation claim fails.

*2. Disparate Treatment*

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

---

[17] *Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kan.*, 691 F.3d 1211, 1217–18 (10th Cir. 2012); *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000); *Taylor v. Pepsi-Cola, Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999); *Rascon v. U.S. West Commc'ns, Inc.*, 143 F.3d 1324, 1333–34 (10th 1998); *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996).

[18] *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004).

[19] *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995).

privileges of employment."[20] To establish a prima facie case of discrimination, a plaintiff must show that: (1) she is disabled; (2) she is qualified with or without a reasonable accommodation to perform the essential functions of her job; and (3) her employer discriminated against her because of her disability.[21]

The parties dispute whether Plaintiff was qualified to perform the essential functions of her job. "To demonstrate that [s]he was a qualified individual, a plaintiff must first establish that [s]he had 'the requisite skill, experience, education and other job-related requirements of the employment position.'"[22] "Second, [s]he must establish that he can perform the 'essential functions' of the position."[23]

"Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires."[24]

> Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job.[25]

There is no question that Plaintiff could not perform the essential functions of her position absent some sort of accommodation. As set forth above, the essential functions of a

---

[20] 42 U.S.C. § 12112(a).

[21] *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003).

[22] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)).

[23] *Id.*

[24] 29 C.F.R. 1630.2(n)(1).

[25] *Mason*, 357 F.3d at 1119 (citing 29 C.F.R. § 1630.2(n)(3)).

CSM included a number of physical requirements that Plaintiff was not able to perform based on her physical ailments and the restrictions placed on her by her doctors.[26]

Plaintiff contends that the CSM job was mostly managerial. However, she concedes that it entailed certain physical requirements that "required her and/or some other employee or driver or some combination of employees to do some lifting and moving of heavy parts."[27] Plaintiff argues that it did not matter how this occurred, only that it did. But, by conceding that she could not do these tasks alone, she demonstrates that she was not able to perform the essential functions of a CSM.

Plaintiff argues that she would have been able to do her job with the use of a cane and with the help of her coworkers. However, as discussed, Plaintiff's requested accommodation was not reasonable. Therefore, Plaintiff cannot demonstrate the second element of a prima facie case.

Even if Plaintiff could meet this element, "[t]he final prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision."[28]

> A plaintiff may establish an inference of discrimination through (1) actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, (2) preferential treatment given to employees outside the

---

[26] The Court must consider the job description in determining the essential functions of the job. *See* 42 U.S.C. § 12111(8) (stating that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job").

[27] Docket No. 18, at 28; *see also id.* at 34 ("In the instant case, the evidence is not disputed that, as Ms. Reynolds' knee condition worsened, she could not climb ladders, lift heavy parts, squat, kneel, and so forth, by herself.").

[28] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

protected class, (3) a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified], and (4) a failure to surface plaintiff's name for positions for which she is well-qualified.[29]

Here, there is no evidence that Defendant placed Plaintiff on leave and continued her leave because of her disability. Rather, the evidence shows that Defendant placed Plaintiff on leave to accommodate her disability and Plaintiff was permitted to return to work as soon as she was cleared to do so without restrictions. There is simply no evidence that discriminatory animus played any role in Defendant's decisions.

Assuming that Plaintiff could demonstrate a prima facie case, her claim still fails. Defendant has articulated a legitimate, non-discriminatory reason for placing Plaintiff on leave. Specifically, that Plaintiff could not perform the functions of her job and that it could not accommodate Plaintiff's request for additional help. While Plaintiff disputes the characterization of her requested accommodation, this dispute is irrelevant at this step of the *McDonnell Douglas* burden-shifting test.

Defendant's burden at this step is "exceedingly light."[30] "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."[31] Defendant's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'"[32] Instead, the Court must determine whether Defendants have

---

[29] *Lincoln*, 900 F.3d at 1193 (internal quotation marks omitted).

[30] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).

[31] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted).

[32] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

submitted evidence that, "*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."[33] Defendant has met its burden here.

Thus, the burden shifts to Plaintiff to demonstrate pretext. "To establish pretext, [Plaintiff] must present 'evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[34]

Plaintiff attempts to show pretext by evaluating what Defendant did and did not do. Plaintiff first complains that Defendant did not send her for a functional capacity evaluation. However, Defendant had information from Plaintiff's own doctors documenting her restrictions. Plaintiff fails to demonstrate how a functional capacity evaluation would differ from the opinions of her doctors.

Plaintiff further complains that Defendant did not allow her a "trial run" to see if she could continue to work as she had. However, as discussed, that accommodation shifts Plaintiff's responsibilities onto her coworkers and required them to do her work. Such an accommodation is not reasonable.

Plaintiff next argues that Defendant did not try to reconfigure her job or offer a reasonably equivalent accommodation. While such things may constitute reasonable

---

[33] *St. Mary's Honor Ctr.*, 509 U.S. at 507.

[34] *Proctor v. UPS*, 502 F.3d 1200, 1209 (10th Cir. 2007) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

accommodations, as discussed, Defendant only needed to provide a reasonable accommodation, not one of Plaintiff's choosing. And, again, Defendant was not required to assign essential functions to other employees.

Plaintiff also states that Defendant did not explore transferring her to a larger store or transferring her to a different job that did not involve the same physical requirements. Reassignment to a vacant position constitutes a possible accommodation, but an employer need not create new positions to accommodate an employee.[35] However, there is no evidence that Plaintiff ever requested such a transfer and there is no evidence that there was a vacant position to which she could transfer.

Plaintiff next argues that Defendant should have conducted a cost-benefit analysis to determine whether hiring a full time assistance would create an undue hardship. However, in his Declaration, Mr. Vickrey states that he did engage in such analysis and concluded that it would have been unreasonable to schedule an additional person whenever Plaintiff was working.[36]

Finally, Plaintiff complains that Defendant did not try to do anything to keep her working. However, this argument ignores that Plaintiff could not perform the essential functions of her job given her restrictions and, as soon as those restrictions were lifted, she was able to return to work. Therefore, Plaintiff has failed to show pretext.

B. RETALIATION

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

---

[35] *See Smith*, 180 F.3d at 1174–75.
[36] Docket No. 17-1, at 107.

12

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[37] To establish a prima facie case of retaliation under the ADA, Plaintiff must show that: (1) she engaged in a protected activity; (2) a reasonable employee would have found the challenged activity materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.[38] Like Plaintiff's claims for discrimination, Plaintiff's claim for retaliation is subject to the *McDonnell Douglas* burden-shifting framework.[39]

"To establish a causal connection, [Plaintiff] must present 'evidence of circumstances that justify an inference of retaliatory motive.'"[40] Here, there is no such evidence and, even if there was, Plaintiff has failed to present evidence of pretext. Plaintiff points to the temporal proximity between her request for an accommodation and her placement on leave. However, temporal proximity alone is not sufficient to defeat summary judgment.[41]

Plaintiff further takes issue with what Defendant did and, more to the point, did not that might have permitted her to continue working, rather than being placed on leave. However, as discussed, these arguments fail and do not demonstrate that placing and extending Plaintiff's leave was pretextual.

---

[37] 42 U.S.C. § 12203.

[38] *Jones v. UPS, Inc.*, 502 F.3d 1176, 1193 (10th Cir. 2007).

[39] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

[40] *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).

[41] *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1138 (10th Cir. 2005).

C.   GENDER DISCRIMINATION

Title VII prohibits an employer from discriminating against any individual because of "race, color, religion, sex, or national origin."[42] "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."[43]

Plaintiff concedes "that she likely cannot satisfy her burden of proof as to disparate treatment on the basis of gender" and "does not challenge" Defendant's Motion on this point.[44] Based upon these statements, the Court will enter judgment as to this claim.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED.

DATED this 15th day of July, 2019.

BY THE COURT:

Ted Stewart
United States District Judge

---

[42] 42 U.S.C. § 2000e-2(a)(1).

[43] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

[44] Docket No. 18, at 40, 39.